GAUDIN, Judge.
Salvador Tortorich appeals from a district court judgment which dismissed his slip and fall claim. Tortorich alleged and tried to show that he stepped into a water meter box and fell, injuring his back.
The trial judge in the 24th Judicial District Court, however, found fairly serious discrepancies in plaintiffs case and denied recovery.
After carefully considering the testimony and examining the documentary evidence, including the numerous photographs of the water meter cover and overall accident scene, we affirm. The evidence is supportive of the district judge’s finding.
On appeal, Tortorich specifies five district court errors:
(1) the trial judge misunderstood and/or misconstrued the testimony of one of plaintiff’s main witnesses, Ronald Gaudet,
(2) the trial judge erred in finding that photographs of the accident scene were staged,
*1104 (3) the trial judge was wrong in finding that Gaudet covered the meter box with a plywood sheet shortly after the accident,
(4) the trial judge erred in not allowing Donald Godlewski to testify as an expert witness, and
(5) the trial judge should not have ruled against Tortorich, considering the evidence submitted.
Tortorich testified that at 9:30 a.m. on April 15, 1985, he drove his automobile to his place of employment at 3609 Robinson Street in Metairie, Louisiana. He said:
“Got out of my car, walked toward the front of the shop and as I was getting closer to the entrance the ground gave way and my right foot went into the hole ...”
After he fell, appellant said, he "... turned around to see what it was that I fell on and I seen the water meter cover sticking in this hole.”
Tortorich had worked at the body shop for several years and knew that there were three meters situated close together in the unpaved area between the roadway and the body shop. He explained, however, that he hadn’t noticed the meters as he walked from his automobile on the day of the accident because they were covered with dirt.
Gaudet, who is appellant’s cousin, owns the M & L Body Shop where Tortorich worked as a body and fender repair man. Gaudet saw Tortorich fall. Gaudet stated that when Tortorich stepped on the meter cover, the meter cover slid forward.
. Gaudet testified that the meter box was covered with mud on the day Tortorich fell. Previously, he said, there had never been any indication that the meter box area was unsafe. From the photographs in evidence, it appears that the meter covers are on the same level as the ground or perhaps slightly below ground level. Many of the photographs show the meters covered with dirt or mud; the trial judge noted in his “Reasons for Judgment” that the . photos of the scene presented by the plaintiff appeared to be ‘staged’.”
Regardless, the presence of debris atop the meter cover would not necessarily make the meter defective within the meaning of strict liability and within the scope of LSA-C.C. art. 2317. In Tracy v. Jefferson Parish, 523 So.2d 266 (La.App. 5 Cir.1988), this Court held Jefferson Parish, the custodian of the water meter in question, responsible because grass that had been permitted to grow between the cover and the meter box rendered the box defective, creating an unreasonable risk of harm.
Here, there was no showing of neglect and no testimony about an accumulation of dirt or debris being under the lid when Tortorich fell. After helping Tortorich into the shop, Gaudet did not go back and look into or around the meter box.
The trial judge concluded that Tortorich had not proven his contentions by a preponderance of the evidence. The “Reasons for Judgment” dwell more on the extreme lack of credibility of plaintiff and his witnesses than they do on whether or not the meter boxes in front of the body shop were defective and/or if they constituted an unreasonable risk of harm. So unimpressed by petitioner’s case was the trial judge that it appears from the tone and direction of his “Reasons” that he simply did not believe Tortorich stepped on or into the meter box.
The Parish’s fact and expert witnesses testified that there had been no complaints about the boxes by the body shop landlord or tenant or anyone else and that the boxes had been properly maintained and were not unsafe or defective. Mike Cannon, a safety expert called by the Parish, testified that the small amount of dirt and gravel on the ledge (on which the cover sits) would not cause the cover to be unstable.
There are countless thousands of water meters in Jefferson Parish, all with easily removable covers and each one representing a possible hazardous condition. To render the custodian liable for an accident, there must be a showing of negligence or neglect, as was done in Tracy v. Jefferson Parish, supra, or that the injury-'causing thing was inherently defective, as in Jones v. City of Baton Rouge, etc., 388 So.2d 737 (La.1980). We are unaware of any Louisiana decisions stating that water meter box *1105 es, despite the unfixed lids, are fundamentally flawed.
In an attempt to prove negligence or neglect, Tortorich called A.J. Scardino, a safety expert who examined the subject water meters on the day he testified. He said that debris on the ledge could cause the lid to move laterally when force was applied. If the top does not fit metal to metal, in Scardino’s opinion, it can be dislodged with relative ease.
Godlewski, whose testimony was proffered, said almost much the same thing about the instability of the meter box cover once dirt or debris accumulates on the ledge. In his estimation, a hinged cover would be safer than a removable top. The trial judge probably erred in not accepting Godlewski as an expert, considering this witness’ background and experience; however, the ruling against Tortorich would almost surely not have changed. The trial judge found petitioner and several of his witnesses lacking in credibility and he (the trial judge) emphasized this in his assigned “Reasons.”
In the final analysis, appellant’s witnesses, as far as the trial judge was concerned, were not as believable as the Parish’s. We cannot say that the factual findings were manifestly erroneous or that the record indicates that Tortorich did in fact prove his case by a preponderance of the testimony and evidence. In addition to questioning the connection between the fall and the alleged loose cover, the trial judge apparently was not convinced that there was an accumulation of dirt or shells on the lid due to the Parish’s negligence or maintenance neglect.
We affirm, with Tortorich to bear costs of this appeal.
AFFIRMED.